UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (LGB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>BANCO BILBAO VIZCAYA ARGENTARIA, S.A.,<br>Defendant. | Adv. Pro. No. 10-05351 (LGB) |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**

*A P P E A R A N C E S:*

*Attorneys for the Defendant*
FRESHFIELDS BRUCKHAUS DERINGER US LLP
3 World Trade Center, 175 Greenwich Street
New York, New York 10007

By: Christian Vandergeest
   David Livshiz
   Elischke De Villiers

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By: Brian Song
   Ariana Dindiyal

**LISA G. BECKERMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") filed his Amended Complaint (the "AC," ECF No. 151) on July 31, 2024 seeking to recover additional avoidable transfers totaling approximately $7 million from subsequent transferee BBVA Miami ("BBVA Miami").

Before the Court is the motion (the "Motion," ECF No. 154) of Defendant (defined below) seeking to dismiss the additional subsequent transfer claims totaling approximately $7 million that are alleged in the AC regarding transfers made to BBVA Miami. The Defendant argues that the claims are time-barred by § 550(f) of the Bankruptcy Code and fail to relate back under Federal Rule of Civil Procedure 15 ("Rule 15"). For the reasons outlined below, the Motion is granted.

## BACKGROUND

The Trustee commenced this Adversary Proceeding by filing the Complaint (the "Original Complaint," ECF No.1) on December 8, 2010. The Original Complaint alleged seven causes of action against Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA" or the "Defendant"). On July 31, 2024, the Trustee filed the AC. Of relevance for the Motion, the AC alleges that BBVA Miami received approximately $7 million in an additional eleven transfers from Fairfield Sentry Limited ("Fairfield Sentry") (collectively, the "Newly Alleged Transfers").

2

On September 11, 2024, the Defendant filed the Motion and an accompanying Memorandum of Law (the "Memorandum," ECF No. 155) and Declaration of Christian Vandergeest in Support of the Motion (ECF No. 156) seeking to dismiss claims for the Newly Alleged Transfers pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and Bankruptcy Rule 7012(b).  The Trustee filed the Opposition to Defendant's Motion to Dismiss (the "Opposition," ECF No. 160) on November 8, 2024.  The Defendant filed the Reply Memorandum of Law (the "Reply," ECF No. 162) on December 11, 2024.

The Court held a hearing on the Motion on February 24, 2025 (ECF No.174).  The Court heard arguments from both counsel for the Defendant and the Trustee.  (*Id.*)

1. **<u>The Original Complaint[1]</u>**

The Original Complaint sought recovery from BBVA of transfers in the amount of $45 million that BBVA allegedly received from Fairfield Sentry.[2]  (Original Complaint ¶ 2.)  The transfers resulted from BBVA's investments in the Madoff Feeder Funds (as defined in the Original Complaint) to hedge BBVA's risk exposure arising from structured notes issued by BBVA and related entities. *Id.* Paragraph 6 discusses investors making large "synthetic investments" into Madoff Feeder Funds.  The synthetic alternative investment products created and offered by entities like BBVA include total return swaps and structured notes. (Original Complaint ¶ 6.) The Original Complaint mentions non-parties Boiro Finance B.V.'s ("Boiro") role as the swap counterparty within note programs Boiro issued.  (Original Complaint ¶ 15.) The Original Complaint also discusses the structured note program in detail.  (Original Complaint ¶¶ 16-18.)

---

[1] For purposes of the Motion, all the allegations in the Original Complaint and the AC are presumed to be true.
[2] The Court presumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding.  *Picard v. Citibank, N.A. (In re Bernard L. Madoff Inv. Secs. LLC)*, 12 F.4th 171, 178-83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

With respect to Boiro, the Original Complaint describes structured note products which allowed for leveraged exposure to, among others, two of the largest Madoff Feeder Funds, Kingate Global Fund Limited ("Kingate") and Fairfield Sentry. (Original Complaint ¶ 21.) The Original Complaint states that these products were sold by Boiro to European institutional investors. (Original Complaint ¶ 23.) The Original Complaint also describes the note programs issued by non-party BBVA Senior Finance, S.A. Unipersonal ("BBVA Finance") which were sold to European institutional investors. (Original Complaint ¶¶ 24-26.) The Original Complaint contains a fair amount of detail about each of these note programs including the swap transactions embedded in the note programs. However, nowhere in the Original Complaint is either BBVA Miami or its private banking clients mentioned.

The Original Complaint contains a paragraph stating that "[t]he Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information [regarding] the Sentry Initial Transfers, BBVA Preference Period Subsequent Transfers, BBVA Two Year Subsequent Transfers and BBVA Six Year Subsequent Transfers and any additional transfers, and (ii) seek recovery of such additional transfers." (*Id.* ¶ 149.)

2. **The Amended Complaint**

In contrast, the AC contains little description about the transfers at issue. The AC states that BBVA and its subsidiaries invested in Fairfield Sentry from at least 2001 to 2008 and that BBVA also invested in Fairfield Sentry to hedge its risk exposure arising from structured notes issued by BBVA and its affiliate, Boiro. (AC ¶¶ 4-5.) The AC states that the Subsequent Transfers (defined in the AC as transfers made by Fairfield Sentry to BBVA from the Fairfield Sentry Initial Transfers (as defined in the AC)) represent a redemption of the equity interests by BBVA as shareholder in Fairfield Sentry. (AC ¶ 95.) On Exhibits C and D to the AC, there is one transfer to

4

BBVA identified and multiple transfers to BBVA Miami identified which aggregate to approximately $51,680,416. Of those transfers, $6,680,416 were allegedly made to BBVA Miami which are the Newly Alleged Transfers.

### 3. The Motion

The Motion seeks to dismiss the claims for the Newly Alleged Transfers under Count 1 of the AC pursuant to Rule 12(b)(6). It argues that claims for the Newly Alleged Transfers fall outside the statute of limitations period provided by 11 U.S.C. § 550(f). (Motion at 8.) Further, BBVA argues that the Newly Alleged Transfers do not relate back to the Original Complaint under Rule 15. (*Id.*) As a result, those claims should be dismissed. The Newly Alleged Transfers are barred by the one-year statute of limitations period proscribed by § 550(f).

Additionally, BBVA argues in the Motion that BBVA Miami is a separate entity from BBVA and that BBVA Miami was not named as a defendant in the Original Complaint. (Motion at 2.) BBVA argues that the relevant statute of limitations expired on June 12, 2012. (Motion at 8.) BBVA also argues that BBVA Miami was sold to Banco Sabadell in 2008 which assumed BBVA's Miami's liabilities and thus, BBVA is not liable for the Newly Alleged Transfers. (Motion at 8.)

In the Motion, BBVA also argues that the initial transfers cannot be avoided since they are protected by the safe harbor provisions 11 U.S.C. §§ 546(g) and 546(e) and/or are not avoidable under 11 U.S.C. § 548(a)(1)(A). (Motion at 13.) BBVA also seeks dismissal on the basis that the AC establishes that BBVA is entitled to the good faith defense under section 550(b). (Motion at 22.)

### 4. The Opposition

The Opposition argues that the Newly Alleged Transfers are not untimely since they relate back to the filing of the Original Complaint pursuant to Rule 15(c)(1)(B). (Opposition at 2.) Under

5

Rule 15(c)(1)(B), new claims relate back to the date of an earlier filing if the new claims "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." (Opposition at 7 (quoting Fed. R. Civ. P. 15(c)(1)(B)).)

The Opposition states that "the subsequent transfers at issue originated from Sentry, involve similar legal theories, occurred during the same time period as the subsequent transfers at issue in the Original Complaint and were received by BBVA." (Opposition at 2.) It also states that it is not proper at this pleading stage to consider BBVA's claim that Banco Sabadell assumed BBVA's liabilities in the sale, including for any claims regarding the Newly Alleged Transfers. (*Id.*) The Trustee also argues that sections 546(e) and 546(g) are inapplicable to the Newly Alleged Transfers. (Opposition at 3.) The Trustee also argues that it is premature and inappropriate to assert a section 550(b) good faith defense in a motion to dismiss and that the Trustee's incorporation of the Fairfield Sentry complaint is sufficient pleading with respect to the avoidability of initial transfers. (*Id.*)

**5. The Reply**

BBVA argues in the Reply that BBVA Miami is a separate entity for the purposes of the Rule 15(c) relation back test and the new claims alleged in the AC against BBVA Miami are unrelated to the allegations in the Original Complaint. (Reply at 3.) BBVA also alleges that the Newly Alleged Transfers arise out of separate conduct from the claims alleged in the Original Complaint (Reply at 8.) Furthermore, BBVA asserts that it is not liable for the Newly Alleged Transfers because Banco Sabadell assumed any such liabilities in the purchase documents (Reply at 12.) BBVA also argues the initial transfers made to Fairfield Sentry were protected by the safe harbor provisions in sections 546(g) and 546(e) (Reply at 14.)

6

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c)

Rule 12(b)(6) states that relief sought in a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is made applicable to this Adversary Proceeding through Federal Rule of Bankruptcy Procedure 7012(b). Fed R. Bankr. P. 7012(b).

Federal Rule of Civil Procedure 15(c)

Rule 15(c) provides,

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c). Rule 15 is made applicable to this Adversary Proceeding through Federal Rule of Bankruptcy Procedure 7015. Fed R. Bankr. P. 7015.

Here, the AC seeks to add claims relating to transfers made to BBVA Miami. So, the initial inquiry is whether BBVA Miami is considered a separate entity under applicable law or is considered to be part of BBVA. If BBVA Miami is considered to be a separate entity under applicable law, then the Motion must be granted as BBVA Miami was not named in the Original Complaint and the statute of limitations has expired. If BBVA Miami is considered to be a part of

7

BBVA under applicable law, then an analysis of the Original Complaint is required to determine if BBVA was put on notice regarding the Newly Alleged Transfers.

BBVA is a financial services company organized under the laws of Spain and its headquarters located in Madrid, Spain (Motion at 3.) At the time of the Newly Alleged Transfers, BBVA Miami was a branch of BBVA located in Miami, Florida (Motion at 4). While there are some circumstances where a foreign bank and its domestic branch are considered separate entities (the "Separate Entity Rule"), applicable case law supports the treatment of a domestic branch of a foreign bank as the same entity for purposes of this Adversary Proceeding.

Specifically, the Separate Entity Rule applies when there is a warrant of attachment that is served upon a bank branch. *See Cronan v. Schilling*, 100 N.Y.S. 2d 474, 476 (Sup. Ct. N.Y. County 1950); *see also Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.E. 3d 223, 226 (N.Y. 2014) (the Separate Entity Rule applies for certain purposes, including CPLR article 62 prejudgment attachments and article 52 post-judgment restraining notices and turnover orders). The concern expressed by the bank regulators in New York and various New York state courts is that it would be extremely burdensome for a foreign bank to have to enforce a warrant of attachment in the foreign bank and all of its other branches. *Cronan*, 100 N.Y.S. 2d at 476.

The methods of communication between a foreign bank located in another country with branches in several other countries are vastly different in 2026 than in 1950. With computers, the internet and electronic funds transfers, the ability of a branch bank to communicate with the parent foreign bank and other branch banks is not difficult, costly or burdensome. There is certainly a question as to whether the Separate Entity Rule is still necessary. However, it is still good law and applies under certain circumstances.

The Separate Entity Rule has not been applied in other contexts by the federal courts in the Second Circuit. Specifically, Justice Sotomayor when she was a District Court Judge held that "the law seems fairly well-settled that the domestic branch of a foreign bank is not a separate legal entity under either New York or federal law." *Greenbaum v. Handlesbanken*, 26 F.Supp.2d 649,652 (S.D.N.Y. 1998). The Second Circuit has taken the position that federal law regards a foreign bank and its branches as a single entity. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 51 (2d Cir. 2012).

The relief sought in the AC is recovery of the subsequent transfers under sections 105(a) and 550(a) of the United States Bankruptcy Code (the "Bankruptcy Code"). Because the relief sought in the AC is under federal law and no relief is sought under New York law, the Court will apply federal law in this Adversary Proceeding to the issue as to whether BBVA Miami is a separate entity. Based upon Second Circuit precedent, the Court holds that BBVA and BBVA Miami shall be viewed as a single entity in this Adversary Proceeding.

The next relevant inquiry is whether the AC "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" under Rule 15(c)(1)(B). "To relate back, the new claim must arise out of 'a common "core of operative facts" uniting the original and newly asserted claims.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 594 B.R. 167, 210 (Bankr. S.D.N.Y. 2018) ("*BNP I*") (quoting *Mayle v. Felix*, 545 U.S. 644, 659 (2005)). The "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Id.* (quoting *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006)). Rule 15 "does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a

9

reasonable measure of common ground with the allegations in the original pleading." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Nos. 08-01789 (CGM), 12-01576 (CGM), 2024 Bankr. LEXIS 1299, at *49 (Bankr. S.D.N.Y. June 4, 2024) ("*BNP II*") (quoting *Picard v. Peter Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("*Peter Madoff*")). "Rule 15(c) should be 'liberally construed.'" *Id.* at *49-50 (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983)). "[T]he purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Id.* at *50 (quoting *Picard v. Fairfield Inv. Fund (In re BLMIS)*, No. 08-01789 (CGM), Adv. Pro. No. 09-01239, 2021 Bankr. LEXIS 2101, at *12 (Bankr. S.D.N.Y. Aug. 6, 2021)).

While the original pleading does not need to inform the defendants of new legal theories, it must "inform the defendants of the facts that support those new claims." *BNP I*, 594 B.R. at 210 (quoting *Off. Comm. of Unsecured Creditors of 360networks (USA), Inc. v. Pirelli Commc'ns Cables & Sys. USA LLC (In re 360networks Inc.)*, 367 B.R. 428, 434 (Bankr. S.D.N.Y. 2007)). Relation back is appropriate when a new claim is "based on the same facts as the original pleading and only changes the legal theory." 3 MOORE'S FEDERAL PRACTICE — CIVIL § 15.19 (3d ed. 2025). "[A]llegations pronouncing new claims in an amended pleading will not relate back when based upon new facts and different transactions . . . ." *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992). However, allegations that "simply 'amplify the facts alleged in the original pleading or set forth those facts with greater specificity' will relate back." *Id.* (quoting *Oliner v. McBride's Indus., Inc.,* 106 F.R.D. 9, 12 (S.D.N.Y. 1985)). In the context of avoidance actions, "[n]ew fraudulent transfer claims relate back to the original pleading where the newly alleged

10

transfers occurred as part of the 'same "course of conduct"' as the originally alleged transfers." *BNP II*, 2024 Bankr. LEXIS 1299 at *50 (quoting *Peter Madoff*, 468 B.R. at 633).

## DISCUSSION

### Overview of *BNP I* and *BNP II*

The Motion argues that the Trustee did not allege a transfer between BBVA Miami and Fairfield Sentry in the Original Complaint, so claims for the Newly Alleged Transfers do not relate back under *BNP I* and *BNP II*. (Motion at 8-12.) The Motion states that *BNP I* and *BNP II* stand for the proposition that where the Trustee has not previously alleged a transfer between a transferee and the relevant fund, subsequent transfer claims to recover such transfers do not relate back and are time barred if they were not filed within the statute of limitations period proscribed by § 550(f). (*Id.* at 8.)

It is true that the Original Complaint does not allege the existence of any transfer from Fairfield Sentry to BBVA Miami. The Original Complaint describes the transfers to BBVA from Fairfield Sentry related to the structured note products and Boiro notes. (*See supra* pp. 3-4.) The Original Complaint does not mention BBVA Miami, nor does it mention transactions involving BBVA Miami's private banking clients and Fairfield Sentry.

The problem with BBVA's argument, however, is that *BNP I* and *BNP II* do not necessarily stand for the proposition that new subsequent transfer claims will not relate back where the Trustee has not previously alleged a transfer between a transferee and the relevant fund. In *BNP II*, the Trustee sought to amend a complaint to add new subsequent transfer claims where the original complaint failed to allege any transfer between the initial transferee and alleged subsequent transferee. There, the Trustee argued that the new transfers arose from the same conduct alleged in the original complaint—the conduct being their investment into BLMIS through feeder funds

11

and their receipt of customer property through the same feeder funds. *BNP II*, 2024 Bankr. LEXIS 1299, at *55. The Court found that this framing of the defendants' conduct was too broad to allow relation back—the proposed framing would have effectively allowed the Trustee to amend pleadings for any transfers connected with the BLMIS Ponzi Scheme pursuant to Rule 15. *Id.* In elaborating, the Court stated, "[t]he Court has already found in this case that new transfers alleged in subsequent amended complaints do not relate back where they are alleged to relate to previously unnamed initial transferees and where they arose out of different loans, facilities, or transactions." *Id.* This finding, while persuasive, should not be construed as a *per se* rule as it was given in the context of that specific proceeding whereas Rule 15 requires an analysis of the specific facts in the action before the Court. *See, e.g., Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000). Regardless, the statement in *BNP II* is seemingly based in part on *BNP I*—a decision that thoroughly investigates the case law surrounding the relation back of avoidance actions under Rule 15.

In *BNP I*, the Trustee sought to amend a complaint to add new subsequent transfer claims where the original complaint alleged transfers of a different type from the newly added claims. The Court dismissed the newly alleged claims, finding that they "ar[ose] from different facts and circumstances and depend on different proof" than the transfers alleged in the original complaint. *BNP I*, 594 B.R. at 210. In its opinion, the Court discussed the decisions rendered in *Fabrikant II*, *Metzeler*, and *360networks*. *Id.* These cases show that, in the context of avoidance actions, "each preferential and fraudulent transaction is treated separately and distinctly." *Id.* (quoting *Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 480 B.R. 480, 492 (S.D.N.Y. 2012) ("*Fabrikant II*"). "[P]roof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct." *Id.* (quoting *Fabrikant II*, 480 B.R. at 492).

12

In *BNP I*, the Court also discussed two cases—*Adelphia* and *Peter Madoff*—that seemingly contradict this finding.  *See id.* at 211-12.

In *Adelphia* and *Peter Madoff*, the courts found that newly alleged transfers related back to the original complaints because they arose out of similar conduct or occurrences.  In *Adelphia*, the court found that newly alleged fraudulent transfers related back to an original pleading.  *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 333-34 (S.D.N.Y. 2009) ("*Adelphia*").  The Court did not treat each transfer separately for purposes of relation back since the newly alleged transfers arose out of the same conduct, at the same time, and involved the same facilities as those alleged in the original complaint.  *See id.*  Furthermore, the original complaint noted that the plaintiff sought to recover all "monies related to the margin loans broadly."  *BNP I*, 594 B.R. at 211 (quoting *Adelphia*, 624 F. Supp. 2d at 333-34).  In *Peter Madoff*, the Trustee sought leave to amend a complaint to bring new initial fraudulent transfer claims against Peter Madoff and Bernard Madoff's sons or their estates.  *BNP I*, 594 B.R. at 211.  There, the court found that new transfers related back since they arose from allegations in the original complaint that the defendants used BLMIS as a "piggy bank," and claims for the new transfers "relied on the same legal theories as the initial complaint."  *Id.*  Furthermore, the original complaint "gave reasonable notice that the Trustee was still uncovering additional transfers."  *Id.*  These cases do not contradict the court's statement in *BNP II* that "new transfers alleged in subsequent amended complaints do not relate back where they are alleged to relate to previously unnamed initial transferees and where they arose out of different loans, facilities, or transactions."  *BNP II*, 2024 Bankr. LEXIS 1299, at *55.  This is because the *Peter Madoff* decision provided leave to add new initial fraudulent transfers—not new subsequent transfers—and the *Adelphia* court found that newly alleged subsequent transfer claims arose from the same facilities as those at issue in the original complaint.  However,

13

the *BNP II* dicta should not be construed as a broader rule for this case since the determination of whether allegations relate back depends on the facts of the specific action before the Court. As a result, the Court will conduct an ordinary Rule 15 analysis to determine whether the Newly Alleged Transfers relate back to the Original Complaint.

**<u>Whether the Newly Alleged Transfers arise out of the conduct or occurrences in the Original Complaint</u>**

Although the Original Complaint outlines a relationship between Fairfield Sentry and BBVA, Rule 15 still requires that the Newly Alleged Transfers arise out of the conduct, transaction, or occurrences set out in the Original Complaint. The Opposition argues that the subsequent transfers arise out of the conduct and occurrences alleged in the Original Complaint. (Opposition at 8.) The Court finds this argument unpersuasive.

The Supreme Court has found that, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (quoting *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982)). Operative facts, in turn, are the factual allegations "which give rise to a right enforceable in the courts." *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943). To plead a subsequent transfer claim, the complaint must allege the operative facts that "the *initial* transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, 'that the funds at issue originated with the debtor.'" *See BNP I*, 594 B.R. at 195 (quoting *Picard v. Legacy Capital Ltd.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016)). Further, the "plaintiff must allege the 'necessary vital statistics — the who, when, and how much —' of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* (quoting *Silverman v. K.E.R.U. Realty Corp.* (*In re Allou*

14

*Distribs., Inc.*), 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007)). "The 'principal inquiry'" for Rule 15(c)(1)(B) "is whether 'the general fact situation alleged in the original pleading' provides 'adequate notice' to the opposing party 'of the matters raised in the amended pleading.'" *Peter Madoff*, 468 B.R. at 633 (quoting *Buchwald Capital Advisors LLC v. J.P. Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 447 B.R. 170, 181 (Bankr. S.D.N.Y. 2011) ("*Fabrikant I*")). Here, BBVA did not receive notice since the operative facts for the Newly Alleged Transfers are fundamentally different from the facts alleged in the Original Complaint.

The Original Complaint did not allege the existence of any transfers from the Fairfield Sentry to BBVA Miami or any transfers involving BBVA Miami or its private banking clients. The Newly Alleged Transfers are also not the "natural offshoot" of the activities described in the Original Complaint since the Newly Alleged Transfers are unrelated to the particularized conduct alleged against BBVA. The allegations pertaining to BBVA's activities are described in detail in paragraphs 21-31 of the Original Complaint.

The Original Complaint sought recovery from BBVA of transfers in the amount of $45 million that BBVA allegedly received from Fairfield Sentry. (Original Complaint ¶ 2.) The transfers resulted from BBVA's investments in the Madoff Feeder Funds to hedge BBVA's risk exposure arising from structured notes issued by BBVA and related entities. (*Id.*) Paragraph 6 discusses investors making large "synthetic investments" into a Madoff Feeder Funds. The synthetic alternative investment products created and offered by entities like BBVA include total return swaps and structured notes. (Original Complaint ¶ 6.) The Original Complaint mentions non-party Boiro's role as the swap counterparty within note programs Boiro issued. (Original Complaint ¶ 15.) The Original Complaint also discusses the structured note program. (Original Complaint ¶¶ 16-18.) With respect to Boiro, the Original Complaint describes structured note

15

products which allowed for leveraged exposure to, among others, two of the largest Madoff Feeder Funds, Kingate and Fairfield Sentry. (Original Complaint ¶ 21.) The Original Complaint states that these products were sold by Boiro to European institutional investors. (Original Complaint ¶ 23.) The Original Complaint also describes the note programs issued by non-party BBVA Finance which were sold to European institutional investors. (Original Complaint ¶¶ 24-26.) The Original Complaint contains a fair amount of detail about each of these note programs including the swap transactions imbedded in the note programs. However, nowhere in the Original Complaint is BBVA Miami or its private banking clients mentioned.

While the Original Complaint alleges nefarious conduct on the part of BBVA, that conduct must still be related to the Newly Alleged Transfers. *Hill v. Oria (In re Juliet Homes, LP)*, No. 07-36424, 09-03429, 2011 Bankr. LEXIS 5116, at *21 (Bankr. S.D. Tex. Dec. 28, 2011)

> The Court must consider two questions: (1) Does the Second Amended Complaint allege that *the new transfers occurred as part of the same course of conduct as the transfers alleged in the original complaint*? (2) Did the original complaint give sufficient notice to the defendants that the Trustees may sue for additional transfers that were part of the same course of conduct?

(emphasis added). Since the Newly Alleged Transfers rely on entirely distinct facts than those alleged in the Original Complaint, they are also not the "offshoot" of the conduct pled in the Original Complaint. *See Slayton*, 460 F.3d at 228 ("[E]ven where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back.") (quoting *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001)).

The Newly Alleged Transfers resulted from transactions under a separate private placement memorandum and subscription agreement that BBVA Miami had with Fairfield Sentry. (AC ¶¶ 66-69.) There is no alleged link between the single $45 million transfer to BBVA and the eleven transfers alleged to have been made to BBVA Miami. The transfers to BBVA Miami occurred in

16

June through October 2007 regarding direct investment in Fairfield Sentry involving private banking clients of BBVA Miami. (AC at Ex. D; Motion at 10.) The single transfer to BBVA occurred in November 2008 and allegedly was made on account of transactions involving synthetic alternative investment products and Boiro notes. (AC at Ex. C; Motion at 10.) There is no allegation in the AC that the transfers involving BBVA Miami were made in connection with synthetic alternative investment products or Boiro notes sold to European institutional investors.[3] Moreover, BBVA Miami was sold to Banco Sabadell before the $45 million transfer alleged in the Original Complaint was made to BBVA. (Motion at 12.) BBVA would not have been put on notice about the alleged transfers to BBVA Miami from the Original Complaint since, at the time that the alleged $45 million transfer was made by Fairfield Sentry to BBVA, BBVA Miami was no longer owned by BBVA. "If the facts in the original pleading do not provide defendant with notice of facts out of which the time-barred claim arises then relation back is inappropriate." *360networks*, 367 B.R. at 433-34 (quoting *106 Mile Transp. Associates v. Koch,* 656 F. Supp. 1474, 1487 (S.D.N.Y. 1987)). Here, allegations against BBVA in the Original Complaint are insufficient to have put BBVA or BBVA Miami on notice and the generalized allegations contained in the AC do not cure this deficiency.

The Opposition argues that BBVA was on notice of the Trustee's intent to pursue the claims for the Newly Alleged Transfers due to the inclusion of a carve-out in the Original Complaint. Specifically, the Opposition argues that BBVA was on notice since the Original Complaint contains a paragraph stating that "[t]he Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Sentry Initial Transfers, BBVA Preference Period Subsequent Transfers, BBVA Two Year Subsequent Transfers and BBVA Six Year Subsequent

---

[3] The Court notes that the Trustee in preparing the AC deleted much of the description of the structured note products and Boiro notes.

17

Transfers and any additional transfers, and (ii) seek recovery of such additional transfers." (Original Complaint ¶ 149.)  However, the Court has previously rejected attempts to amend pleadings for additional subsequent transfers based on similar language.  *See BNP II*, 2024 Bankr. LEXIS 1299, at *55.  Generalized assertions of the plaintiff's intent to pursue subsequent transfer claims are not sufficient to have put defendants on notice. *Fabrikant II*, 480 B.R. at 492.  "Overly general original pleadings do not provide defendants with adequate notice as to what facts they are to defend against, and, therefore, such general allegations cannot be hooks on which to hang later amended pleadings." *Id.* at 493.

This Court's holding comports with case law discussing the relation back of subsequent transfers.

> In the context of avoidance actions, "each preferential and fraudulent transaction is treated separately and distinctly," because the "[p]roof offered for one transaction does not govern as to another and, as such, relation back cannot be ordered between different transactions merely for being similar or arising from the same conduct."

*BNP I*, 594 B.R. at 210 (quoting *Fabrikant II*, 480 B.R. at 492; *accord 360networks*, 367 B.R. at 434; *In re Metzeler*, 66 B.R. 977, 983 (Bankr. S.D.N.Y. 1986)).

**Other Grounds in the Motion**

Since the Court has determined that the Motion should be granted based on Rule 15, it has decided not to address the other arguments made by the Defendant in the Motion as a basis for dismissal of the claims regarding the Newly Alleged Transfers to BBVA Miami.

**CONCLUSION**

For the reasons described herein, the Motion is granted.  It is hereby ordered that the claims relating to the Newly Alleged Transfers are dismissed from the AC.

Dated: January 28, 2026
      New York, New York

                                           ***/s/ Lisa G. Beckerman***
                                           THE HONORABLE LISA G. BECKERMAN
                                           UNITED STATES BANKRUPTCY JUDGE